TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ANDREW BROWN (Cal. Bar No. 172009)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0102
     Facsimile: (213) 894-6269
     E-mail:   andrew.brown@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:20-cr-00531-MWF |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S SENTENCING POSITION; EXHIBITS |
| v. | |
| AJA ANN JASMIN, | Hearing:   July 8, 2021 |
| Defendant. | 2:00pm |

**Concurrence with the PSR**

The government concurs in the findings of the Presentence Report, which results in a guideline range of 33-41 months in prison.

**I.    OPPOSITION TO DEFENDANT'S SENTENCING POSITION**

Defendant asks the Court to reject the sentencing guidelines range completely, and sentence her merely to probation.  As described below, defendant's arguments for a wholesale abandonment of the guidelines do not justify her position.

**A.    DEFENDANT'S MULTI-YEAR FRAUD WAS NOT ABERRANT**

Defendant contends that she deserves no jail time because her embezzlement was aberrant.  (Dkt. 27, page 3.)  Defendant argues that she led a "crime free life" for 42 years, and that her background is "flawless."  Id.  To be sure, defendant has no previous criminal convictions, and is therefore in the lowest criminal history category, but that is already reflected in her guideline range of 33-41 months in prison.

Defendant's claim of a flawless, crime-free life for 42 years is overstated.  At a minimum, her fraud lasted from 2013 to 2018, or over five of those years.  (PSR ¶ 2.)  Further, she was previously prosecuted for a different embezzlement in 1998.  (PSR ¶ 72.)  It is hard to know what to make of that earlier prosecution, as defendant was acquitted of it following a jury trial.  Of course the People failed to prove their case beyond a reasonable doubt, and so defendant garnered no criminal history points, but that is not the same thing as leading a "flawless" and crime-free life warranting a downward departure *from* Criminal History Category I.

More to the point, defendant's actions in this case show that she pursued fraud relentlessly and with planning, not spontaneously in a moment of weakness.  Defendant had many opportunities to reflect on her embezzlement, including times when her offense was clearly about to be discovered, and at each one she chose to double-down on her crime and get in deeper, as discussed in more detail below, rather than to come clean—-until she retained defense counsel.

**B.   DEFENDANT VICTIMIZED MANY MORE THAN 10 UNION MEMBERS**

Defendant argues that the enhancement for 10 or more victims should not apply because she stole funds only from her union, a single entity.  (Dkt. 27, page 2.)  While it is true that defendant stole most of her embezzled funds from the union, that was not the limit of her offense.  After defendant bled the union's bank accounts dry, she extended her fraud to her fellow union members by doubling their union dues so that there would be more money for her to embezzle:

> Jasmin falsely told SoCalGas that the union had voted to double the union dues it must deduct from union members' paychecks in order to replenish the union's funds, by a letter to SoCalGas Labor Relations Department in July 2017. This led to a deduction from $21 to $42 of each union member's paychecks per pay period.

(PSR ¶ 20.)  By fraudulently doubling the deductions from her union members' paychecks, defendant made more than 200 union members (PSR ¶ 12) additional victims of her offense, amply supporting the Probation Office's finding that there were at least 10 victims. (PSR ¶¶ 21-25, 40, 50-51.)

**C.   DEFENDANT ABUSED HER POSITION OF TRUST**

Defendant argues that she should not receive an enhancement for her abuse of a position of trust even though she was the president of the union she defrauded, the sole person with responsibility for filing its financial reports, and had sole custody of the financial records that would have revealed her crime had she not disposed of them.  (PSR ¶¶ 16, 19, 34.)  Defendant argues that in order to commit an embezzlement, one *must* occupy a position of trust, implicitly making a double-counting argument.  (Dkt. 27, page 2.) Defendant is mistaken on two levels.  First, the guidelines which

3

cover defendant's offense, Section 2B1.1, apply to all fraud and theft offenses, not just embezzlement, and so do not take into account the extra betrayal of trust that is often associated with embezzlement.  Second, even embezzlements do not necessarily involve an abuse of position of trust.  Any teller, cashier, accounts payable clerk, or other low-level employee could embezzle funds without triggering the abuse of a position of trust enhancement. USSG § 3B1.4, app. Note 1 ("This adjustment does <u>not</u> apply in the case of an embezzlement or theft by an ordinary bank teller or hotel clerk because such positions are not characterized by" discretion and lack of supervision).  Here, defendant abused the trust placed in her as president of her union to, among other things, fraudulently double the dues of all union members so that there would be more money in the union coffers for her to steal.

### D.   DEFENDANT OBSTRUCTED JUSTICE

Defendant argues that she should not receive an enhancement for her obstruction of justice because it would apply in any case in which the criminal attempts to conceal his crime.  (Dkt. 27, page 2.)  That is not true.  First, the enhancement only applies to obstructive conduct that occurred during the "investigation, prosecution, or sentencing of the instant offense," so defendant's filing false financial reports to hide her crime before the investigation began do *not* trigger this enhancement.  USSG § 3C1.1. Second, the guidelines provide many exceptions even for obstructive conduct occurring after the investigation has begun.  USSG § 3C1.1, app. Note 5(A)-(E).

The Probation Office correctly found this enhancement applies because defendant altered the bank records she provided to union

auditors investigating the finances of her union.  (PSR ¶ 57.)
While that alteration of the records is sufficient to support the
enhancement, defendant obstructed justice in other ways as well—
sometimes successfully.

Another component of defendant's wire fraud was seeking payment
from the union for time she purportedly spent on union business and
therefore could not spend earning an hourly wage for SoCalGas.
Defendant, of course, scammed her union and billed them for "lost
time" that she did not, in fact, lose.  But because the union
records defendant was charged with maintaining disappeared (PSR
¶¶ 29, 34), it is impossible to determine now the full extent of her
"lost time" fraud.  (PSR ¶ 36(c) & fn.2.)  To be sure, some of her
lost time claims are obviously fraudulent, and no union records are
needed to prove that:  she billed the union for time she allegedly
lost to union business even when she was on disability at SoCalGas,
and so had no wages to lose for union business.  (PSR ¶ 36(b).)  But
the bulk of defendant's "lost time" payments occurred when defendant
was purportedly working, so only a detailed day-by-day analysis of
what she billed compared with what other records show she was
actually doing could reveal fraud—and that is impossible since
defendant never provided the union with her records.  (PSR ¶¶ 34,
36(c) & fn.2.)  Accordingly, the insurance company that bonded
defendant paid the union over $300,000, which assumes that all of
defendant's "lost time" claims were fraudulent, as they lacked the
records to show that any of the claims were legitimate.  (PSR ¶ 38.)
The government, in contrast, bears the burden of proving loss, and
so stipulated to a loss figure that assumes all of defendant's "lost
time" claims—other than those that were obviously fraudulent such as

those when she was on disability—were supported.  This is as it
should be.  Whichever party bears the burden of proof regarding the
lost time claims will naturally fail to carry it based on the
missing records, but it is specious for defendant to argue that she
did not obstruct justice when her insurer has agreed to losses more
than 50% higher than those to which the parties stipulated and she
alone is responsible for the missing records that caused that
different assessment of loss.

### E.   SENTENCES IMPOSED FOR DIFFERENT OFFENSES ARE IRRELEVANT

Defendant argues that she should receive a sentence of
probation because two other defendants, Shin Ho Kang and Oscar
Jefferson, convicted of different offenses, conspiracy to commit
bank fraud, received sentences of 30 and 48 months in prison.  (Dkt.
27, page 2.)  Courts, of course, are "to avoid unwarranted sentence
disparities among defendants with similar records who have been
found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  But
neither Shin Ho Kang nor Oscar Jefferson embezzled money at all,
least of all from a union of which they were president, nor did they
fraudulently increase the dues on 230 union members, or attempt to
obstruct justice.  Indeed, as Shin Ho Kang was 70 years old and had
no criminal history worse than selling liquor to a minor, his
sentence demonstrates, if anything, that defendant does deserve a
prison term like the one recommended by the Probation Office, not
probation as defendant insists.

### CONCLUSION

Defendant tried to work as little as possible while collecting
the most money, generally through fraud.  Even while she was

purportedly working, her co-workers noted that she was frequently "off board," meaning not available to work, so that her "department constantly needed backup for coverage." (PSR ¶ 101.) Defendant fraudulently bilked her union for time she claimed she was unable to work at SoCalGas. Defendant also fraudulently transferred union funds to her and her husband's credit card accounts. (PSR ¶ 36(a) & fn.1.) She forged the signatures of her fellow union officers to obscure the fraud. (PSR ¶ 17.) Similarly, she submitted false financial reports to her union, including altered bank statements, to hide her thefts. (PSR ¶ 19.)

Worse, when defendant had so depleted the bank accounts of her union that there was nothing left for her to steal, she came up with a new twist on her old embezzlement to extend it: lie to SoCalGas that the union had voted to double the dues of all 230 members so there would be twice as much coming into the union bank accounts for defendant to purloin. (PSR ¶¶ 20-22.)

Defendant betrayed her fellow union members to enable her conspicuous consumption, which included an equestrian lifestyle, driving a Maserati, cosmetic medicine, and shopping at luxury retailers like Van Cleef & Arpels. (Search Warrant Affidavit Exhibit ¶¶ 15(b), 32, 39.)

The day defendant's fraud was finally uncovered by the union, defendant claimed she became disabled and could no longer work. (Search Warrant Affidavit Exhibit ¶ 34.) Defendant continues to collect disability payments, and claims she cannot work because of anxiety and depression. (PSR ¶ 95.)

While defendant's four-year long fraud, abuse of position of trust, obstruction of justice, and repeated decisions to continue or

expand her fraud whenever discovery seemed likely more than justify

the 33-month low-end sentence recommended by the Probation Office,

the government, mindful of the parsimony principle, recommends a

sentence of only 30 months in prison.  If the Court follows the

government's lenient sentencing recommendation, it is likely that

defendant would only serve about 19 months in prison.  Under the

First Step Act, inmates can now receive almost two months of good-

time credit per year, or about five months off for a nominal 30-

month sentence.  Further, it is common now for the Bureau of Prisons

to transfer inmates to a residential re-entry center or home

detention for the final six months of their sentence.  Defendant's

fraud undermined the solidarity that is at the heart of all unions

(Exh. 22-24) and warrants at least a prison sentence of 30 months.


 Dated: June 29, 2021              Respectfully submitted,

                                   TRACY L. WILKISON
                                   Acting United States Attorney

                                   SCOTT M. GARRINGER
                                   Assistant United States Attorney
                                   Chief, Criminal Division

                                   *Andrew Brown*
                                   _____
                                   ANDREW BROWN
                                   Assistant United States Attorney

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA